Good morning, Your Honors. Edwin Schreiber and Eric Schreiber for plaintiff and appellant Michael Ambers. So which one are you? I'm Edwin. I'm the oldest. I got the 41066 Y number. I'd like to back up for a second and see what we know and what we don't know. And one of the things we know now, particularly late, is hackers can get into anything. Target was one thing, Home Depot, but now the IRS. And we, at least as a taxpayer, always assumed my records were safe. So we're real concerned about personal identification information. And that's what Pineda, which was 7-0 in the Cal Supreme Court, unlike Apple, which was our case also, which was 4-3, they said they wanted robust consumer protection. And that makes a lot of sense. Now we come to BUY.COM. They ask for a phone number. Well, Mr. Ambers' package was mailed to him. I've mailed a lot of packages in my life. The post office never asked me for a phone number. Asking for the phone number is arguably, to play the devil's advocate, necessary for them to protect against fraud with respect to the use of the credit card. That's where I was getting to, Your Honor. Paragraph 22 alleges not one credit card company in the United States uses a phone number to verify fraud protection. So they're obviously collecting the phone number. And again, it's a 12B6. You have to take the allegation as true, although we're very careful about that, that they're collecting that number for their own use. Because it is not used for credit card verification, period. And it makes a lot of sense when you think about it, because I don't know about you, but I have cell phone numbers, office numbers, home numbers. How would you know which number? So now we know... And when I put that in, and then they go, we recognize the phone number you're calling from as authorized for this account. Right. What I'm talking about now, verification. Does the credit card company, your Bank of America, count? But this is not that situation. This is Buy.com, a third party using that phone number. And no credit card company that we can find, Visa, MasterCard, American Express, uses a person's phone number when a merchant asks for verification of an account. And now I would like to move on to Apple for a minute. Because what does Apple say? Apple says because it was a simultaneously exchange for app versus payment, Apple was naked to the world. They had no way to verify. We are in the exact opposite position now, where Buy.com has all the time in the world. Mr. Ambers places his order online, and he has to give an address because it has to be mailed to him. Absolutely proper. They can take two months if they want to, and I'm being obviously a little facetious, to make sure that credit card is good. And they have an address. But really under your theory, if carried to its logical conclusion, isn't asking even for the address a violation? Well, no, because Song Beverly says if there's a secondary need, you can obtain that information. And if you'll notice our complaint, we don't say giving the address is improper because they mailed the package. Well, obviously, if it doesn't give an address, it can't be mailed or Federal Express to us. So no, we have never argued the address was wrong. But the phone number. I've gotten calls when they're trying to deliver a package saying, we're on your street, but we can't see your house number. Or it's written down wrong. We want to, because obviously when you deliver something, if it gets sent back and then you have to send it again, that costs money, right? Right. So, I mean, isn't it logical that the phone number is just when they're out delivering, that if there's a problem with the delivery? For two reasons, no. Again, this came by U.S. mail. And secondly, while it might be convenient or useful, we are talking about the robust protection that Pineda talked about. Pineda was simply a zip code. And 7-0 Cal Supreme Court says, no. You can only, when you're dealing with a credit card transaction under Song Beverly, you may only ask for the information, and you may only ask and record, which they recorded it here, obviously, for the information necessary. For quality assurance. For quality assurance only. Well, if they make it voluntary, we don't have a problem. The problem in this situation is you can't place the order without providing this personal identification information. Okay. Are there any published decisions that apply the Song Beverly Act to online transactions? Well, Apple does, of course. And there's the recent BevMo case, which is going up on the Cal Supreme. We filed a petition for hearing. But you're arguing that Apple really isn't online, right? No, Apple is. Apple is very clear. When Justice Liu cobbled together four votes, he was very specific, and we quote in our brief, we are dealing with a simultaneous exchange of product electronic for money, and therefore Apple could not be protected. This is the antithesis. And that's the main distinction in Apple. Apple was a simultaneous electronic exchange of information. And that's where the Cal Supreme Court said they're not protected because they give up the product, in this case an electronic transmission. And we quoted extensively in our brief that portion of Judge Liu's opinion, where he says we don't even look at MOTO transactions. That's an interesting acronym. And so this is the antithesis.   They're not charging with their product when the order is placed. Plus, they've got an address. And if they have a problem in getting ready, they have a very easy way to contact the consumer. Just bounce an email right back to the person who sent it. This was an online order. You have a problem, you're not sure of the address, you're not sure of the credit card, you just bop back an email and say, sir, we have a problem with your order. Please provide this information, send us an email, do something. But they don't need the phone number. And that's the problem here. Can I ask you something that may not be relevant to the legal issue? Why can't I get excited about asking someone for a telephone number? After all, your telephone number, many telephone numbers, are in telephone books. Now you can go on the internet and find out someone's address and telephone number. When you call somebody, unless you've paid extra for the privilege, your telephone number shows up on the other party's line. Even if you've asked for the privilege of not having your number recorded, I find that my credit card company knows. They have some way around it and they say, and so you're calling from your home where we send you. So for some reason, I can't get excited about this being some sort of extraordinary invasion of privacy. Let me give you two answers, Your Honor. Maybe it still comes within the California law, but I'm just sort of curious about this being such a... When you talk about your own company, that's different. This is a third-party merchant. Yeah, in all likelihood, he could plug in your name and address and find out your telephone number on the internet. But if you look at Pineda, which was the fountainhead of this, it says a zip code. Now what is more innocuous than a zip code? California Supreme Court 7-0 says asking for that zip code is a violation of Song-Beverly. And the same thing here. Asking for that phone number is for their personal use. They now, because in the case of Buy.com, since they don't need it... But Pineda's not online, right? Oh, yeah. Pineda was in store. Thank you. Okay. Okay, Pineda was in store. But this isn't Ask a Friend. Okay. But, yeah, Pineda was in store. Okay, so that's a distinction. Whether it's a distinction without a difference, but it's a distinction. I agree with you. I think it's an absolute distinction without a difference. Go ahead, finish. Go ahead? No, go ahead. I'll hold my question. Pineda says robust consumer protection. This is a consumer protection statute. And what the California legislature said is, you're not going to have your privacy invaded just because you're using a credit card. So now we go on to Apple. And Apple says, well, if you're downloading product, that's certainly beyond the scope of Song Beverly. But in the context of that analysis, Judge Liu goes on to say, look, if you look at what the California legislature is actually doing, you look ahead to the California Online Privacy Protection Act. That demonstrates that California knew how to deal with online commerce. And it didn't deal with online commerce in Song Beverly. How do you respond to that argument? Well, Song Beverly was done before the Internet came into existence. And... That was Judge Liu's point, I think. Yeah, but the other act really gives no protection. It just says you're supposed to tell people how you're, I won't use the word raping, grabbing their information. Song Beverly is a different situation. The legislature says phone numbers are not required to be given and kept track of as part of transactions. It's the same thing with the driver's license. They say, well, it's your ID. They're not allowed to record the information off your driver's license. It's absolutely forbidden. Well, but I think, okay, if Song Beverly was passed when the Internet wasn't a factor, it's not like, all right, the U.S. Supreme Court has to, the Fourth Amendment, they have to make determinations with technology moving forward. And what is an invasion? What's an unreasonable search and seizure? But there's an argument on statutes. All they have to do is change it. If they want to add something, it's different. Statutory interpretation is different than constitutional adjudication. And so why isn't the argument, hey, it didn't contemplate reaching Internet, online things, because it didn't even exist. But we had mail order. We had telephone order back then. MODO is the acronym. And what does the court say? Well, Song Beverly, at least as I read Judge Lewis' opinion, that it applies to. And if you read Justice Kennard's dissent, which I thought was brilliant, you know, it says the same thing. You're not, the legislature could have then, if you take it to its conclusion, or the California Supreme Court could have simply said Internet transactions are exempt. They don't say that. And the legislature could now amend it the other way and say, you do it on anything involving the Web. But the problem with this case is they're now taking the Web and using it. They can ask for anything. I mean, and I don't mean to be ridiculous, but they can take a phone number. Why not ask for your Social Security number? Your place is employment. It's a different, the Social Security number is a different story. But can I ask you, you're suing on behalf of a class that includes consumers outside of California? No. Pure California consumer class, Your Honor. Pure California consumer class. So how do you meet the minimal diversity standard? In other words, you still have to show, you don't have to show complete diversity, but you still have to show that there is some diversity between the plaintiff and the defendant. We filed this in state court and it was removed under CAFA. We started in state court and they removed it under CAFA. Right there. I believe that's correct because I'm fairly positive we started in state court and it was removed under CAFA. But it is a pure California class. There's an exception under CAFA for local controversy, you know, state things. So, you know, I don't know, you know, I think the argument could be that the defendants would rather be, the appellee defendants would rather be in federal court. But there is only, but diversity under CAFA is not the same as diversity otherwise. It's called minimal diversity. Why do you say that you've limited it to California? I'm reading your complaint. This is a class action brought on behalf of all natural persons who are United States residents. You also say, you say in your reply brief that the main purpose of the act is to protect California customers. So does the act limit it to California customers, whatever your complaint says? Give me one moment, your honor. I did not anticipate a jurisdiction question, but it certainly. Well, this goes to the, if you're asking for more than California residents, this would go to the issue whether the statute was intended to apply to protect someone from New York who's making a call to California to this company. I mean, with the class as proper, as you've structured it, basically you're trying to impose Song Beverly on New York residents who are not engaging in a transaction that has anything to do with California. So you kind of have a dormant commerce clause problem. Yeah. I'm trying to look really quickly at the excerpts of record, your honor. Well, why don't you take some time? We'll give you a few minutes for rebuttal. Thank you, your honors. Thank you very much. Good morning, your honors. If I may please the court. Michael Hornack on behalf of AppelleeBuy.com. Good morning. When Judge Guilford granted Buy.com's motion to dismiss in this matter, no California appellate authority had yet ruled on the question of whether the logic and reasoning of the California Supreme Court in Apple v. Superior Court concerning online transactions for downloadable files ought to also apply to other online transactions here. Well, I think the Supreme Court stopped short of making this, you know, I think we have to read a few tea leaves to come to your conclusion. I think he was trying to read some tea leaves. Go ahead. And Judge Guilford then tried to read those tea leaves, as have a number of district court judges and trial court judges, and concluded that the same argument does and ought to apply to online transactions. But now, as of May 3rd of this year, we actually have a California appellate case. And that case is also by Mr. Ambers, Ambers v. Beverages & More, 236 Cal. App. 4th, 508. So now, the California Court of Appeal has held that 1747.08, subdivision A, does not apply to an online purchase of merchandise that plaintiff subsequently retrieved at a Venmo retail store. In so holding, the court said, quote, applying the Supreme Court's reasoning in Apple, we cannot conclude that had the legislature anticipated online sales transactions when enacting the Credit Card Act, it would have applied the prohibitions imposed by section 1747.08, subdivision A, to online transactions despite the unavailability of the safeguards afforded by subdivision D, the key anti-fraud mechanism in the scheme. Now, in short, we now have the appellate court concluding that the reasoning in Apple does apply. And the allegations in the complaint here with regard to the online transaction are almost verbatim the same allegations that were contained in the Ambers v. BevMo case. Why do we know that? Because the appellate court in BevMo quotes the language from the complaint there, and we know that by referencing page 2 of the appellate's excerpt of the record here as to exactly what's asserted. And if there was any doubt whatsoever, in the pleading at page 22 of the appellate's excerpt, plaintiff states the request for telephone number immediately preceded the credit card payment, and Buy.com will not permit a customer to purchase their products by credit card. Could you tell me what Buy.com does with the telephone number? Yes. What is it needed for? In other words, in the Apple case, if the statute applied in the context of downloading, Judge Liu said that Apple would have no way of protecting itself against fraud. But here you get the name and address quite properly under the statute because it's necessary to send the product to the person who's ordering it. So what exactly, in this case, were to go to trial or discovery, what do you do with this? How do you use it to protect against fraud? Buy.com uses it the same way Apple does. Now, in the Apple case, the address, the name, and the phone number were all collected. So what was collected was exactly the same. Now, when... No, no, but what do you do with it? We use it for fraud checks. How? How? How? How? So when there's a questionable transaction or a chargeback or a purported chargeback by the credit card company, that's one mechanism that Buy.com has for checking the authenticity of the person who purchased the product. I don't know what you mean by a chargeback. The fact that there are relationships between retailers and credit card processing companies. And credit card processing companies take a small fee. Every retailer uses it. But there are instances in which the credit card transaction company gets reversed. Well, let's say I call and say, hey, I got charged for this. I did not order this. Then they say, okay, so we're charging back. My bank will just... But then if you ask me my phone number is different than what the phone number that the person that made the charge gave, then that's another indication that I didn't order it, right? That's one of many situations. But can't you get that after the fact? I mean, if I understood Judge Callahan's question. In most instances, yes, that's after the fact. In other words, the initial transaction, unless there were large transactions. Right, so I want to know, the initial transaction, you asked for the telephone number. What are you going to do with it? Right then. Is there a contemporaneous use? Well, to fully explain how it is used, Buy.com, you may be more familiar with Amazon. Collect the initial data and open an account, which then identifies who you are. It includes the phone number, and then every other transaction you complete, you don't have to fill in again the phone number again. So you don't have to fill in the phone number. You're still not saying what you need it for, or what you do with it. In the context of fraud in reversal of transactions, and also in the context of delivery problems. So under the separate section, the exemption under the Act for assisting in deliveries, which... Well, you just send them another email if there's a problem in delivery. I don't understand. First of all, that's not fraud, but that's a separate issue. That's not delivery. So were you coming within the statute portion of the exemption for information relating to the delivery of a package? Well, Buy.com's argument is that we are outside the statute. However, as a secondary argument... Suppose you were inside the statute. We argue that if we're inside the statute, then... Judge Liu's decision is very carefully limited. I don't know how many times he repeats the language online, orders online, downloading, rather, information. He keeps repeating that all the time. And his opinion as to the necessity for the information they ask is limited to those transactions. But I want to know what you do with it. In other words, from what you're saying, this is arguably maybe a defense rather than a reason for dismissing the complaint that the statute applies here. Because I still couldn't... From everything that you said, I still couldn't pass a test on what you do with it to prevent fraud at the time. I believe you've asked several questions. So, first, with regard to the California Supreme Court and its limiting the decision to online transactions for downloadable files. In our view, the reason for that was quite clear. That's all the complaint in that matter asserted? Well, and he didn't have more votes. If you can count to, you know, it's kind of like they say, he counted to four. And that's all he had. That's possible as well. I wasn't there. It's also clear that the argument in the real party of interest brief in that case framed the question in that matter. And let's face it, the California Supreme Court challenged the legislature, look, if you don't think we have it right, if there needs to be some revision made, go ahead and do it. And has the legislature done that? No, they haven't. Well, it was a completely correct decision as applied to the facts in that case. Why would the California legislature change the statute? But he says in an earlier portion of opinion, the statutory language suggests that the legislature at the time it enacted this section did not contemplate commercial transactions conducted on the Internet, but it does not seem awkward or improper to describe the act of typing characters into a digital display as writing on a computerized form. And he goes on to say that just because the Internet wasn't in existence at the time doesn't mean the statute can't be applied. And as I view it, the controlling fact was that the address was needed or the information there was needed because of the nature of the transaction, which was buying music online or whatever it is that they were selling that you downloaded. I don't... I'm just trying to grasp, and you still haven't answered the question of what you do with that telephone number, why you ask for it in terms of preventing fraud at the time of the transaction. I mean, normally before you send it, you will have cleared the transaction with the credit card company. So the credit card company would have authorized it and would have been satisfied with whatever information you gave them. And they presumably would have said, I really give my telephone number when I order things on the telephone and the credit card company clears it. So I'm just trying... You still haven't answered the question what you do with the telephone number and maybe you should answer it. Well, I've tried to answer it to the best of my ability, Your Honor. The information is collected. The information is used in the context of potential fraudulent transactions. It is used to follow up when someone learns of a potential fraudulent transaction. It's used in no way different than Apple uses it. There wasn't anything unusual on the downloadable file. The fact is that at the time of the transaction, there's no card presented. There's no mechanism for looking at a photo ID. And the California Supreme Court says in that context that collecting the address and the phone number is appropriate. There's nothing in the statute that says what personal information is inappropriate and which is inappropriate. And then our secondary argument... But I think, just to make sure, there are some software companies that will check the phone number against the credit card phone number at the time of the transaction. If I'm understanding your answer, you do not make contemporaneous fraud checks with the phone number. True? It all happens afterwards, potentially. I believe except for larger transactions, that is accurate. So for your typical small transaction... Let me ask you a publication question. Larger transactions. Viacom also sells televisions and things that are very expensive. And then what do you do with it? Then there may be greater use of that. You have special delivery issues. You mean greater use of the software? No, no. With a larger transaction, yes, there are. Even if using the software that Chief Judge Thomas described? Well, no, I mean, there are software... He was giving an example. Yeah, yeah. I think Judge Callahan had a question. Let me ask you a publication question. Let's say, either whether we were to agree with you or to agree with the other side. What we just say California law is will be law of the case in this case. It still isn't... That's what the California Supreme Court would do. So even if we agree with you, should we publish on this? Because the California Supreme Court can then say, they can say whatever the law is and the next time it would come up, that's what would be the law of California, which is for this case, right? Interesting question. Or any cases in federal court. Interesting question, Judge Callahan. In Butter Tom's view, and as the court here has made clear in Hubbard v. Sobrecht, 554, Pet. 3rd, 742, this court should follow the decisions of the California Courts of Appeal unless it feels that there's convincing evidence that the Supreme Court would have ruled differently. No, I understand that. But in terms of what we publish, it would still have effect of if California Supreme Court says nothing else, any cases in federal court would have to be decided, it would be precedent for those cases. But it doesn't become, it's not precedent for what California does ultimately. So we usually, a lot of times, we don't publish on those cases because all we're doing is giving our best gloss on what California law is. Sure, I understand that. And certainly that's the court's prerogative. In Butter Tom's view, it would be nice for the purpose of online retailing in general for consistency and predictability of law that everyone out there understand that there's a law that we don't have inconsistent rulings between the Court of Appeal... Maybe we should certify the question to the California Supreme Court as an alternative that would give you exactly what you want, a uniform binding opinion. Except, Your Honor, right now that's what we have is a uniform binding opinion in Ambers versus Bev Moe. Well, we don't have any inconsistent... I guess the question for us is is Bev Moe enough post-Apple for us to predict with reasonable certainty what the California Supreme Court's going to do? And we may take that and Judge Liu's opinion and say yes. We might say, well, you know, Judge Liu's opinion stopped short. We only have one California Court of Appeal decision. We don't have enough yet to predict. So under those circumstances, certification appropriate or not? I mean, that's what we're faced with, I think. That's the decision, and I think that's... BIO.com doesn't take a position on that, Your Honor. Okay. Now, to Judge Callahan's question, I think what she was getting at was this, is that our decisions aren't binding on California law. Only the California Supreme Court has. But they are binding in federal courts of this circuit. So our decision would bind the federal courts of this circuit on this question of California law. And does BIO.com have a position on whether we should issue a precedential or non-presidential opinion? Good interpretation. In that context, the reason I believe BIO.com believes it would be useful is that there have been a number of trial court decisions in this area and district court decisions. And yes, they've all come down the same way, but sure makes it simpler if there's actually an appellate court, Ninth Circuit decision that makes it clear and then every retailer doesn't have to re-articulate. I assume you would be happy with that based on the assumption that you won. That, of course, is the case. That's right. Can I ask you the final question? No, no, please. On this issue, is it your view that this California statute applies to a transaction by a New York person who's ordering from BICOM in California? Your Honor, our view is that it's a denial of due process to BIO.com for it to apply for the reasons we explained. No, forget about due process. Can't we assume that when California enacts a statute, he says, in page two of his reply brief, that it was intended to protect California residents. And one of the other statutes that's in this area, COPA, actually says explicitly that. So I'm just asking you a question whether we could say that California did not intend to have extra territorial effect to protect people from any place else in the country where they might not enjoy such protection. I believe the problem with that argument is that the California courts have spoken on it. And to the extent that the transaction occurred in California, and here BICOM was located in Aliso, Vallejo, that the courts have interpreted it as applying to the transaction, regardless of whether I believe it's appropriate or not. Regardless of where the person who ordered it made the call? I understand, Your Honor, that New York has its own and a similar statute, and the Assembly now is considering amending it to expressly apply with various descriptions to electronic transactions, but it doesn't change the fact that I think California takes this wide view of it. And just so I understand, for jurisdictional purposes, where we are, BICOM is a Delaware corporation with its principal place of business, and it has subsequently been acquired. Is that true? It has subsequently been acquired by Rakuten USA. And Rakuten is what corporation? Where? It's a Delaware corporation, I believe, Your Honor. With its principal place of business? I believe it's... I'm not sure I know the answer to that question. It is ultimately owned by Rakuten Inc. outside the U.S. In terms of diversity jurisdiction, is it their place, is it where they were a citizen or had their principal place of business at the time the case was brought, or can a subsequent change affect the issue of diversity jurisdiction? I should know the answer. I don't believe a subsequent change affects that decision, but I'm not certain, Your Honor. Any further questions? Thank you for your... Go ahead. I just was going to point out, contrary to what counsel stated, I believe the class here as defined was a nationwide class and not a California class, and of course the case started in federal court, not state court. Very good. Thank you. So it wasn't removed. It was not removed. Thank you, Your Honor. Yes, my apologies on that. California is a federal case and you have most of the issues. There's one more important fact. The contract involved has California choice of lock laws in it and Orange County venue. Very quickly... It says what? That California law will apply? Apply to the transaction, and therefore Song Beverly is in there. They specifically choose California law and they specifically set venue in Orange County, California. You mean when a person orders, consenting to... Consenting to the application of California substantive law. That is correct, Your Honor. Then from there you have to determine that the law applies to this or that the law would... I mean, someone could make a challenge as to the way that you're asking it to be applied would be extraterritorially. Right, but I guess that would basically come up in the motion to certify the class. You could deal with that issue and use the phone number later, but that's an affirmative defense on their part, and that's not a 12B6 issue at a later date. So now are you changing your answer on for whose benefit you're suing? Are you suing for the whole country or just for California residents? As pledged, Your Honor, it's the whole country because of the California choice of lock laws, and I apologize. I thought the case had been removed. It was not. It's a 12B6 issue, but not on 12B6. You deal with that issue on class certification. Is it appropriate to apply this, and who's in the class, but not on the 12B6. Did we state a claim for relief as to someone? And I think we did. We would prefer the opinion, however it comes out to be published. Obviously, we're sort of the... This is our baby, and however it comes out, it's a prestigious panel. It would be good. And what about certification to the Supreme Court of California? I don't think, frankly, I don't know if they would take it or not, Your Honor. Well, it's up to them. Yeah, I understand that. And as I said briefly, we have already filed... What's your answer? As to the BevMo case, we have already filed... Oh, no. I think that's correct, Your Honor. I just... This case has dragged so long as it is. We would like some certainty, and BevMo, we have filed a petition for a hearing on it, and there's a lot of differences in BevMo. You said the case has dragged on so long as a practical matter. The damages to each member of the class is going to be next to nothing, or unless there's a liquidated damages provision. There is, and that's the point. And as you can see in one of our footnotes, the damages... And unfortunately, there is no appellate authority as to how the court assesses the statutory penalty. So we've settled a few of these, but there is no appellate guidance on... But it's a statutory penalty. It's not an... Well, what is it? $750 per violation. Up to $1,000. $250 for the first violation and $1,000 for each subsequent violation, although I'm unaware of any court ever imposing $1,000 per violation, and it's a practical matter they wouldn't in this case. We've had some others adapt beyond... But that's a statutory penalty, and the... Again, there's no appellate authority as to how you assess that penalty. Are there further questions from the bank? Further questions? Thank you for allowing us extra time, and we appreciate your... Interesting case. The case will be submitted for decision. Thank you both for your arguments.
judges: Korman, Thomas, Callahan